Marisol Cardenas

On behalf of Herself and
all others similarly situated,

      Plaintiffs

    v.                                  Case No.  22CV961

Zignego Co., Inc.

      Defendant

## FIRST AMENDED COMPLAINT

Plaintiff, by her attorneys, for her First Amended Complaint against Defendant states as follows:

1.      This is an individual and proposed collective action under the Fair Labor Standards Act; as well as an individual and proposed class action under Wis. Stat. §109.03(1) and (5) and §103.455 against Zignego Co., Inc. ("Zignego") to recover straight time and overtime wages that were unpaid because (a) Zignego failed to include when computing its employees' overtime pay cash that it paid to its employees in lieu of providing them with fringe benefits; (b) Zignego failed to include in the regular rate calculation some cash that it paid to its employees for their work away from the jobsites; (c) Zignego failed to use the regular rate method to compute its employees' overtime pay though it neither included all appropriate compensation in computing its employees' overtime pay nor had established wage rates for each type of work performed by its employees; (d) Upon information and belief Zignego failed to adopt a neutral system of rounding its employees' work time to the nearest quarter hour; (e) Zignego failed to count time spent by its employees attending mandatory meetings as hours worked when computing its employees'

1

overtime pay; and (f) Zignego failed to compensate its employees for their time spent related to post accident drug testing mandated by Zignego.  In addition, Plaintiff brings an individual claim that Zignego discharged her in retaliation for her filing of her original complaint in this case.

## JURISDICTION AND VENUE

2.	This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq; as well as supplemental jurisdiction over the Plaintiff's claims that arise under Wisconsin law in that the Wisconsin law claims challenge the same policies and practices as the FLSA claims.

3.	This Court has personal jurisdiction over Zignego pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure because Zignego is subject to the jurisdiction of a court of general jurisdiction in the State of Wisconsin, while the Eastern District of Wisconsin is located within Wisconsin.

4.	Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because Defendant resides in the Eastern District of Wisconsin, while most of the events at issue in this lawsuit occurred in the Eastern District of Wisconsin.

## THE PARTIES

5.	Named Plaintiff Marisol Cardenas is a former dump truck driver employed by Zignego.  Cardenas also performed other work for Zignego such as flagging and escorting other vehicles.  Cardenas' FLSA consent form has already been filed with the Court.

6.	Zignego is a construction company based out of Waukesha, Wisconsin.  It primarily works on projects with federal funding, so that it must pay federally mandated minimum wages for its employees' hours worked on the jobsites of such projects.

2

7.	Zignego is an employer within the meaning of Wis. Stat. §109.03(1). At all relevant times between August of 2019 to the present, Zignego has had annual gross volume of sales of not less than $500,000.

## FACTS

8.	Plaintiff generally performed work for Zignego on projects that are covered by federal minimum wage determinations, including projects covered only by the Davis-Bacon Act, projects only covered by the Contract Work Hours and Safety Standards Act, and projects covered by both Acts. For all of Plaintiff's work on projects covered by any federal minimum determinations within a classification recognized by those applicable determinations, she received cash payments equal to the wage rate listed on the applicable federal minimum wage determination, fringe benefit contributions including 401(k) contributions and sometimes training contributions, and a cash payment equal to the difference between the full fringe benefit rate shown on the applicable federal minimum wage determination and the claimed value of the fringe benefit contributions. ("Cash Fringe"). The sum of the cash payments and fringe benefit contributions always equaled the total package rate shown on the applicable federal minimum wage determinations.

9.	Zignego always paid all Cash Fringe payments directly to Plaintiff, rather than to a trustee or third person pursuant to a fund, plan, or program.

10.	Plaintiff had no obligation to use Cash Fringe payments received from Zignego to purchase benefits. Because Zignego was paying cash rather than providing any benefits to its employees, it had no need to anticipate the amount of cash it would need on hand to fund self-funded benefits for its employees.

11.	When Plaintiff worked as a dump truck driver for Zignego, she received compensation for her time spent away from the jobsite, such as the time between her pre-trip

3

inspection and her arrival at the jobsite, and the time between when she left the jobsite and when she delivered the truck to its final destination for the day, whether it be the company shop or a jobsite.

12. When Plaintiff worked as a dump truck driver, was paid for her time spent away from the jobsite and worked on projects covered by federal minimum wage determinations, she received Cash Fringes for her hours worked away from the jobsite.

13. For performing the same kind of work Plaintiff received different pay rates depending on the project that she worked on, so that Zignego did not establish a single rate of pay for each kind of work that Plaintiff performed.

14. Zignego never included Cash Fringe payments when it computed the amount of overtime premium pay that Plaintiff is entitled to when she worked more than 40 hours per week.

15. When Plaintiff worked on a project covered by a federal minimum wage determination, after she had already worked 40 hours for the week, she received overtime pay computed using the rate for the job and classification of her work during overtime hours, rather than the regular rate that she earned during the workweek.

16. Plaintiff sometimes would have received more overtime pay had it been computed using her regular rate for the workweek, rather than the rate for the job and classification that she performed work within during overtime hours.

17. In 2020, Plaintiff attended an annual training session along with at least 100 other Zignego employees. Her time spent attending the training session was neither paid, nor counted as hours worked when determining her eligibility for overtime pay.

18. Before the training session, Plaintiff received a notice from Zignego stating that she would be considered to have resigned her position if she did not attend the training session.

4

19. The training session were designed to teach Zignego employees to perform their current jobs more safely, and therefore was directly related to the Plaintiff's safe performance of her current job duties for Zignego.

20. Plaintiff was paid for more than 40 hours during the workweek in which she attended the training session in 2020, so that she would have been eligible for more overtime pay for the week had Zignego counted her time spent attending the training session as hours worked.

21. According to Zignego's Employee Handbook, employees are paid in quarter hour units, with start and end times within six minutes of each quarter hour rounded to the nearest quarter hour.

22. Upon information and belief, Zignego would round all start and end times that are seven minutes away from the nearest quarter hour in its favor, so that over time its system of rounding favors Zignego, and would not result in fully compensating Zignego employees for all of their hours worked.

23. When Plaintiff was involved in an accident during work hours, Zignego required Plaintiff to travel to a hospital or clinic for a post-accident drug test.

24. Zignego required Plaintiff to take the post-accident drug test as a part of its safety program to ascertain whether its employees were under the influence of any drugs at the time that an accident occurred during working hours.

25. Plaintiff was not paid for the time in between when she was signed out from work at the jobsite following the accident, and the time that she entered her vehicle and started driving home after completing the post-accident drug test.

26. On August 24, 2022, Anthony Zignego, who is employed as both a Project Manager and the Safety and Human Resources Director for Zignego, informed Plaintiff that her name had

5

popped up in a class action lawsuit. Defendant therefore was aware of Plaintiff filing a lawsuit against it by no later than August 24, 2022.

27. On August 29, 2022, Zignego sent a letter to Plaintiff that stated that Plaintiff had admitted she was a former employee of Zignego, and that Zignego was accepting her "resignation".

28. Plaintiff in fact never informed anyone, on or before August 29, 2022, that she was a formerly employee of Zignego. Plaintiff instead was a current employee of Zignego who had last worked for Zignego on August 26, 2022.

29. Zignego falsely claimed that Plaintiff describer herself as a former employee of Zignego to cover up its actual decision to discharge Plaintiff in retaliation for her filing of her original complaint in this case.

## COLLECTIVE ACTION ALLEGATIONS

30. Plaintiff brings her First Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other similarly situated hourly employees of Zignego who, just like her, were subject to Zignego's uniform policies that (a) excluded Cash Fringes when computing their overtime pay; (b) used the rate for the type of work method rather than the regular rate method to compute their overtime pay; (c) always rounded start and end times seven minutes from the nearest quarter hour in Zignego's favor; and (d) failed to count as hours worked their time spent attending annual training sessions.

31. Plaintiff additionally brings her first Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other similarly situated truck drivers of Zignego, in that they were subject to Zignego's uniform policy that paid Cash Fringes to its drivers for their hours worked away from the jobsites of Davis-Bacon Projects, and then excluded those Cash Fringes from the regular rate used to compute its employees' overtime pay.

6

32.     The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to Plaintiff, in that the Court can determine on a uniform basis the legality of the overtime determination and compensation policies that Zignego equally applied to each of its employees.

## CLASS ALLEGATIONS

33.     Plaintiff seeks to represent the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All hourly employees employed by Defendant Zignego during the time period of August 22, 2020 to the present who (a) worked on projects covered by a federal minimum wage determination for which they received Cash Fringe payments for their work at jobsites; (b) received Cash Fringe payments for their work away from the jobsite of projects covered by the Davis-Bacon Act; (c) had a start time or end time that was seven minutes from the nearest quarter hour; (d) received more than one wage rate for work performed during the same workweek; (e) attended the annual safety meeting during a workweek in which they performed other work for Zignego; or (f) was required by Zignego to undergo a drug test.

34.     The persons in the class identified above are so numerous that joinder of all members is impracticable.  Since Zignego would at any time employ 100 or more employees who worked on its jobsites, and 100 or more employees would attend Zignego's annual company meetings, there are hundreds of members in proposed subclasses (a), (c), (d), (e), and (f).  Upon information and belief Zignego has employed 50 or more hourly non-exempt drivers who received cash fringes for their work away from the jobsites of Davis-Bacon projects; along with future drivers it may employ who would be equally affected by any orders that this Court may enter.

35.     There are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class including whether Cash Fringe payments received for work performed that is covered by federal minimum wage determinations must be included in computing the regular rate; whether

7

Cash Fringe payments for work performed away from the jobsite on Davis-Bacon projects must be included in computing the regular rate; whether Zignego can use the rate for the type of work method to compute its employees' overtime pay; whether a system that always rounds punch times seven minutes from the nearest quarter hour in the employer's favor is lawful; whether employees' time spent attending the annual Safety Trainings must be counted as hours worked; and whether employees' time spent undergoing drug testing required by the employer must count as hours worked.

36.     Plaintiff's claims are typical of those of the Class in that she, just like each member of the proposed subclasses, received Cash Fringes for her work on and off jobsites, Zignego never included Cash Fringes paid to her to compute her regular rate, she always had her overtime pay computed using the rate for the type of work performed during overtime hours, all of her start and end times that were seven minutes from the nearest quarter hour were rounded in Zignego's favor, her time spent attending mandatory training in 2020 was not counted as hours worked; and her time spent undergoing a drug test mandated by Zignego was not counted as hours worked.

37.     Named Plaintiff will fairly and adequately protect the interests of the Rule 23 class; and have retained counsel experienced in wage and hour litigation related to overtime pay and training time.  There is also no antagonism between Named Plaintiff and other class members in that Zignego can equally modify its employee compensation policies to avoid future liability whether or not it also pays back overtime wages to its employees.

38.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Damages sustained by class members pale in comparison to the costs of litigating their individual claims; while damages can largely be computed by applying uniform formulas to Zignego's own records; or alternatively by relying upon estimates to make up for Zignego's inadequate recordkeeping. Litigation on a class wide basis is also superior because

8

it will permit the Court to resolve predominate legal questions that drive the resolution of this litigation, while obviating the need for unduly duplicative litigation that might result in inconsistent judgments about the applicability and interpretation of the relevant statutes.

**COUNT I.    CLAIM FOR UNPAID MINIMUM WAGE AND OVERTIME PAY UNDER THE FLSA.**

39.    Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-38 of the First Amended Complaint.

40.    To comply with the FLSA for its employees' hours worked on projects covered by the Davis Bacon Act, Zignego must pay to its employees time and a half the Basic Hourly Rate of Pay.  See 40 U.S.C. §3142(e).

41.    Cash Fringe payments that Zignego paid to its employees do not qualify under §3141(2)(B) because they are neither paid to a trustee or third party, nor incurred by Zignego to provide benefits to its employees.

42.    Since prevailing wages equal the hourly basic rate of pay plus the amount referred to in §3141(2)(B), because Cash Fringe payments are not included in §3141(2)(B), they must instead constitute a part of the basic hourly rate of pay under §3141(2)(A), which under §3142(e) must be included in computing FLSA overtime pay for hours worked on Davis-Bacon projects.

43.    Hours worked by employees away from the jobsite of a Davis-Bacon project are not covered by the Davis-Bacon Act, so that whether cash fringes paid for work away from a Davis-Bacon jobsite must be included in computing overtime pay is governed by the FLSA rather than by the Davis-Bacon Act.

44.    Unlike the Davis-Bacon Act, no provision of the Contract Work Hours and Safety Standards Act states that its requirements displace the requirements of the FLSA.  An employer therefore must comply with the higher requirements of the FLSA to comply with both statutes.

45. Cash Fringe payments cannot be excluded from the FLSA regular rate because it is not paid to a trustee or third person; and is not paid for the purpose of providing benefits to employees. See 29 U.S.C. §207(e)(4).

46. Zignego therefore cannot exclude any of the Cash Fringes paid to its employees when computing their overtime pay; so that Plaintiff is entitled to recover all overtime pay she would have received had Zignego computed it using the regular rate method after adding in all Cash Fringes that she received.

47. Zignego is not entitled to use the rate for the type of work method to compute its employees' overtime pay both because it failed to include Cash Fringes in computing its employees' overtime pay; and because it established different pay rates based on the nature of the projects on which its employees performed work rather than the kinds of work that its employees performed.

48. By rounding all start and end times that are seven minutes from the nearest quarter hour in its favor, Zignego created a rounding system under which there is a four out of seven probability that a start or end time would be rounded in its favor. Such a rounding system is not neutral, and would not result in full compensation of the employees for all of their hours worked.

49. Because Zignego required its employees to attend paid training, and because the training is directly related to making sure employees performed their current jobs more safely, the employees' time spent attending the training must count as hours worked.

50. Plaintiff is entitled to all additional overtime pay she would have received if her start and end times had been rounded using a neutral system; and if her time spent attending paid training was counted as hours worked.

51. Because Zignego does not have any legitimate justifications for its violations of the FLSA, and because Zignego cannot identify any reasonable investigations that it made into the

10

FLSA's requirements before this lawsuit was first filed, Plaintiffs are entitled to 100% liquidated damages on all overtime wages owed to them.

52. Because Zignego was generally aware that it was obligated to pay its employees time and a half for their hours worked over 40 per week, yet failed to investigate how the FLSA's overtime requirements apply to its specific system of compensation, Plaintiffs are entitled to the application of a three years statute of limitations.

53. Plaintiff is additionally entitled to her reasonable attorneys' fees incurred in prosecuting this first cause of action.

**COUNT II: CLAIM FOR UNPAID WAGES BROUGHT PURSUANT TO §109.03(5).**

54. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-53 of the First Amended Complaint.

55. Because DWD §274.03 requires employers to compute its employees' overtime pay using the regular rate, thereby adopting the FLSA's definition of the regular rate, Zignego's methods for computing its employees overtime rate of pay violate Wisconsin law for the same reasons that those methods violate the FLSA.

56. Because Wisconsin law is similar to the FLSA in setting rules applicable to determining when training is compensable, and because Wisconsin law does not allow employers to round its employees' start and end times in a manner that violates the FLSA, Zignego's failures to properly credit Plaintiff for her hours worked violate Wisconsin law for the same reason that the failures violate the FLSA.

57. Plaintiff was required by Zignego to undergo post-accident drug testing, so that her exertion of undergoing the drug testing was both required and controlled by Zignego.

58. Post-accident drug testing is an important component of Zignego's safety program, so that Plaintiff underwent post-accident drug testing for the benefit of Zignego's business. Indeed,

11

whereas a positive test result could result in Zignego disciplining or discharging Plaintiff, Plaintiff had little to gain from a negative test result.

59. Under Wisconsin law, an employer must pay to its employees full wages rather than just minimum wages. Plaintiff therefore is entitled to additional straight time compensation for her worktime, including time that Defendants' improperly rounded off, that she spent attending mandatory training, and that she spent undergoing mandatory drug testing, even if she did not work more than 40 hours during workweeks in which those events occurred.

60. Plaintiff is entitled to recover, in addition to overtime wages owed to her, 50% of said owed overtime wages as liquidated damages, plus her reasonable costs including actual attorneys' fees incurred in prosecuting her claims against Zignego.

**Count III.    Retaliation In Violation of the FLSA.**

61. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-60 of the First Amended Complaint.

62. On August 22, 2022, Plaintiff filed a lawsuit against Zignego with the Eastern District of Wisconsin. Said lawsuit advanced claims under the FLSA.

63. Zignego discharged Plaintiff, even though Plaintiff never stated she was a former employee of Zignego, by purporting to accept a resignation that Plaintiff never tendered.

64. Zignego terminated Plaintiff in retaliation for Plaintiff filing FLSA claims against it with the Eastern District of Wisconsin.

65. Plaintiff therefore is entitled to reinstatement to Zignego, plus repayment of all compensation that she likely would have earned if Zignego did not terminate her employment in violation of the FLSA.

WHEREFORE, Plaintiff respectfully request the Court to enter an order that:

12

a. Finds that Zignego is liable to her, along with all persons who timely join the collective action, all overtime wages owed to them under the FLSA, plus an equal amount as liquidated damages, plus her actual market value attorneys' fees and costs incurred in prosecuting this claim;

b. Finds that Zignego is liable to her, along with all persons who do not timely exclude themselves from the proposed class action, all overtime wages owed to them under Wisconsin law, plus 50 percent of the owed wages as liquidated damages, plus her actual market value attorneys' fees and costs incurred in prosecuting this claim;

c. Enjoins Zignego from excluding cash fringes, which are paid on its present and future employees' hours worked that are not covered by federal minimum wage determinations, from the regular rate used to compute their overtime pay;

d. Orders Zignego to reinstate her, and make her whole for discharging her in retaliation for her filing the original Complaint in this case, and

d. Grants to her such further relief as the Court deems just and proper.

Dated this 1st day of December, 2022.

/s/Yingtao Ho
Yingtao Ho
Email: yh@previant.com
Attorney for Plaintiffst
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI   53203
Telephone: 414-271-4500
Fax: 414-271-6308

13